IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELIJAH CAMPBELL**<br>208 Medlar Drive<br>Indiana, PA 15701<br><br>   *Plaintiff,*<br><br>  vs.<br><br>**AVO PHOTONICS, INC.**<br>120 Welsh Road<br>Horsham, PA 19044<br><br>   *Defendant.* | No. _____<br><br>CIVIL ACTION<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Elijah Campbell (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Avo Photonics, Inc. (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq*.), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), Title VII of the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000 et. seq.), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit pursuant to the PHRA from date of dual-filing with the EEOC. Plaintiff's PHRA claims however will virtually mirror his claims currently filed pursuant to the ADA and Title VII.

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Avo Photonics, Inc. (*hereinafter* "Defendant") is a photonic company

that designs, manufactures, sells, and services opto-electronic components and systems at the above-captioned address

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a Black (African-American) male.

12. Plaintiff was hired by Defendant effective on or about July 15, 2024; and in total, was employed by Defendant for approximately 9-10 months until his unlawful termination "effective April 29, 2025," (discussed in detail *infra*).

13. Plaintiff's job title was Operator I (although sometimes referred to as an Assembler).

14. From a management standpoint, Plaintiff reported up a chain of command (none of whom were Black or African-American) which included a Team Lead, Austin (last name unknown) (*hereinafter* "Austin"), a Line Manager, Theo Fry (*hereinafter* "Fry"), Second Shift Team Lead Devin T. (last name unknown, *hereinafter* "Devin T."), and ultimately Justin Schaller (*hereinafter* "Schaller") and also reported

15. From a Human Resources ("HR") standpoint, Plaintiff primarily communicated with Alison Lang (*hereinafter* "Lang"), Defendant's Director of HR.

### i. *Race Discrimination*

16. During Plaintiff's employment, he experienced racial discrimination in scheduling,

overtime assignments, and other terms and conditions of employment. For example, but not intended to be an exhaustive list:

      i. Plaintiff began to experience disparate treatment from management in relation to the scrutiny of his work, including being written-up or disciplined for minor mistakes that he non-African-American coworkers similarly made but were not similarly disciplined;

      ii. Plaintiff was not given opportunities for promotions or raises while he non-African-American counterparts were; and

      iii. Plaintiff was informed by a coworker that Devin T. stated he did not like to work with Black people.

17. Plaintiff voiced complaints of this discrimination and disparate treatment to all levels of management and HR, including Austin, Fry, Schaller, Lang and even Dan Riben (*hereinafter* "Riben"), Defendant's Director of Manufacturing, prior to his termination from employment (while he was working physically.

18. Plaintiff made these complaints on at least three occasions and specifically used the phrase "racial discrimination."

19. Despite these complaints, nothing was done to investigate or remedy the race discrimination Plaintiff experienced.

20. On Plaintiff's last physical day of work in or about late January 2025 (pre- paternity leave, discussed *infra*), Plaintiff met with Lang and Riben in person in a meeting room to discuss his leave. During this meeting, Plaintiff informed Lang and Riben that he was experiencing racial discrimination and that he had raised such concerns through the chain of command of management, yet nothing had been done to remedy the same.

21. Lang's only response was that Defendant is an "Equal Opportunity Employer," and to brush off Plaintiff's concerns.

22. Following this meeting, no one from Defendant did any meaningful investigation

4

into Plaintiff's complaints.

### ii. Paternity/FMLA Leave

23. Plaintiff has a daughter who was born on December 19, 2024.

24. Pursuant to Defendant's policies, Plaintiff was to be entitled to paid parental leave.

25. As a result of such policies and the recent birth of his daughter, Plaintiff requested to utilize his parental leave benefit beginning in January 2025.

26. To Plaintiff's surprise, in response to his request Defendant's HR and management gave him substantial resistance and told Plaintiff he was not eligible for parental or paternity leave because his child was not born within 6 months of his physical start date (which was not a requirement of Defendant's policies).

27. Plaintiff complained that he should be entitled to this parental leave and that he felt mistreated as a man or father seeking such leave, expressing exasperation that he did not think a mother would endure such opposition to a parental leave.

28. Plaintiff made these concerns very well known to human resources and management.

29. After Plaintiff's complaints of discrimination, Defendant finally agreed to let him take parental (or paternity) leave.

30. Plaintiff was explicitly told the company was also separately granting him "FMLA leave" for this time period.

31. Although Plaintiff later (post-employment) became aware he would have needed to be employed with Defendant for at least a year before becoming eligible for FMLA, while employed, Plaintiff relied upon assurances by Defendant that he was considered on "FMLA leave" (which he understood to be federal job protection).

32. Defendant is therefore estopped from denying FMLA protections (including as to retaliation).

33. In relation to Plaintiff's parental and approved FMLA leave, there was a painstaking back and forth process where Lang was not responsive, unclear in communication, and frequently mixed things up related to important issues.

34. <u>First</u>, Lang was not conveying or understanding Defendant's parental leave policy properly, and as described *supra*, Lang *finally* agreed Plaintiff should have been given parental leave per policies (*after* Plaintiff made discrimination complaints on account of gender), and Plaintiff commenced a leave of absence in late January 2025.

35. <u>Second</u>, while Plaintiff did not know it at the time (or while employed), Lang apparently does not understand the FMLA properly.

36. Plaintiff relied upon Lang's assurances that Plaintiff was covered by the FMLA. For example, on April 18, 2025 Lang emailed Plaintiff (saying Plaintiff was "still under approved FMLA"):

> From: **Alison Lang** <alang@avophotonics.com>
> Date: Fri, Apr 18, 2025 at 2:10 PM
> Subject: Re: Accomodation Request
> To: gg gg <ecampbelle888@gmail.com>
>
> Hello,
> I was able to review your entire LFG claim detail. You are still under approved FMLA leave until April 24, 2025. Please plan on having your update by this time period.

On April 24, 2025, Lang emailed Plaintiff (about his "approved FMLA"):

> On Thu, Apr 24, 2025, 10:20 AM Alison Lang <alang@avophotonics.com> wrote:
> Hello Elijah,
>
> As you know, your approved FMLA leave concludes today. We kindly request that you provide an update regarding your return to work or any necessary documentation to support an extension.

37. Plaintiff was informed by Lang, Defendant's Director of HR, that he was approved

6

for FMLA through April 24, 2025 (to care for his newborn).

38. This was assured both verbally and in writing to Plaintiff.

### iii. *Plaintiff's Disabilities and Need for Reasonable Accommodations*

39. In addition to a need for parental leave, Plaintiff suffers from disabilities of his own, including chronic leg, hip, and back problems (among other physical complications), which impact his ability to stand or sit for elongated periods of time, among other daily life activities.

40. As a result of these disabilities, Plaintiff has had multiple surgeries.

41. Despite Plaintiff's aforesaid disabilities and limitations, Plaintiff was able to perform his job duties well; however, he (at times) required some reasonable medical accommodations, such as the ability to take periodic breaks to stretch.

42. Although approved for FMLA leave until April 24, 2025, Plaintiff returned to work on April 18, 2025 where he met with Lang in person and informed her he was able to return to work immediately but informed her he would need a reasonable accommodation of the ability to stretch for a few minutes every 3 hours.

43. Plaintiff gave Lang a medical note, dated April 15, 2025 which stated: "Pt has underlying orthopedic condition and needs accommodations to stretch every 3 hours."

44. Plaintiff shared with Lang that he only needed to stretch for approximately 5-10 minutes, every 3 hours (which is equivalent to a total of 15-30 minutes in a 10-hour work shift).

45. Lang ended the meeting on April 18, 2025 by informing Plaintiff he could not return to work yet because he requested an accommodation, and she would discuss the matter with Defendant's management.

46. In reality, it does not appear Lang even attempted to discuss the requested accommodation with Plaintiff's management before promptly trying to document inaccuracies and

accommodation denial(s).

47.     Shortly after their meeting (on the same day), Lang emailed Plaintiff a follow-up email that was completely different than what Plaintiff discussed with her or requested.

48.     Specifically, on April 18, 2025 Lang emailed Plaintiff (after their meeting):

> Hello Elijah,
>
> It was great to connect with you in person earlier today. As we discussed, the last correspondence I have from you is from January 30, 2025.
>
> I understand your accommodation request. However, due to the need for a 40 hour work week to maintain employment, and the fact that your schedule is for 10 hour shifts, **accommodating 1-2 hour stretching breaks every 2-3 hours is not feasible**. **This would require you to be scheduled for a 16 hour shift in order to meet your hours. I'm also unsure whether your doctor would approve such an extensive shift**.
>
> As we mentioned, **Avo Photonics doesn't offer part-time positions**. Please consult your doctor today to explore alternative accommodations, such as shorter breaks every three hours, which would still allow you to work a full 40-hour week.
>
> Since you were expected back at work already, please provide an update from your doctor as soon as possible.
>
> Thank you.

49.     Plaintiff interpreted Lang's email as an intention create a narrative that was false so that she would be able to force him to stay on medical leave and not return.

50.     Plaintiff followed up with Lang to clarify that he was **not** seeking what she put in her email and that Plaintiff needed more time to schedule a doctor's appointment to get additional documentation (to verify he just needed **short** breaks).

51.     Plaintiff was also led to believe that until his accommodations were "clearer" from a doctor, he could not return to work.

8

52. Plaintiff emailed Lang on April 29, 2025, explaining that he was trying to get an appointment with his specialist doctor as soon as possible.

53. Lang is so disorganized that she was even confusing the dates in which she told Plaintiff to return to work.

54. In multiple emails (cut and pasted *supra*), Lang conclusively told Plaintiff he was approved for "FMLA leave" **through April 24, 2025**.

55. Plaintiff communicated (verbally and via email) with Lang that he was scheduling a doctor's appointment in early May 2025 to illustrate he did not need the medical accommodations she was wrongly documenting. Lang then emailed Plaintiff on April 29, 2025 stating:

> Hello Elijah,
>
> **As your approved Parental Leave concluded on April 08, 2025, you were expected to return to work promptly**. We haven't received the requested update regarding your own accommodation request nor have we heard from you until today, April 29, 2025.
>
> You may file a short-term disability claim with Lincoln Financial directly. You can contact them directly at 800-290-1129 to inquire about this option.
>
> We wish you the best of luck in your pursuits,
>
> Thank you,

56. Lang documented in her April 29, 2025 email that Plaintiff was purportedly supposed to return to work by April 8, 2025, and had in essence been a no-show since then despite that: (a) Plaintiff tried to return to work on April 18, 2025 (but was precluded by Lang because she would not approve a request to stretch for 10-15 minutes); (b) Plaintiff was *actually* approved for leave until April 24, 2025; and (c) Plaintiff was in the process of getting a medical appointment to clarify Lang's misstatements (or misunderstanding) of his accommodation needs (which he informed Lang of).

57. Either Lang negligently could not keep track of Plaintiff's return date, or she was intentionally trying to manipulate his return date.

58. Following Lang's April 29, 2025 email, Plaintiff attempted to contact Lang (without response).

59. On May 8, 2025, Plaintiff emailed Lang explaining she has been non-responsive, and Plaintiff wanted to provide additional medical info, but it appears he had already been terminated:

Alison Lang,

I have not heard back from you, and I have been terminated from the company systems. I was going to provide additional medical info, but it seems like I have been separated from the company. I am just going to file for unemployment unless you tell me by the end of the day I am not terminated. Thanks.

Elijah Campbell
Corealign Operator 1
484-994-2835

60. Plaintiff was ultimately able to get an appointment with his specialist on May 12, 2025 where he was provided an updated note stating:



10

61. This updated medical note confirmed what Plaintiff initially asked for and needed – to simply be allowed to stretch for 5-10 minutes, 3 times a day.

62. Plaintiff could have accomplished this during allotted break times without even interfering with actual work time, which was a very reasonable and easy-to-provide medical accommodation.

63. Plaintiff should have been permitted to resume working pending clarifying documentation in mid-April of 2025 when he requested to return to work.

64. If Defendant truly demanded more clarifying medical documentation to support a request for something Plaintiff could have done during his allotted break times, he should been afforded a slightly longer medical leave as an **ADA accommodation** (than afforded under the FMLA).

65. Lang did not respond to Plaintiff before May 8, 2025, and ignored Plaintiff's May 8, 2025 email where he asked if he was terminated, offered to provide additional medical documentation, and stated he would be left with no choice but to file for unemployment if I continued to get no response.

66. Suddenly, on May 27, 2025, Plaintiff was emailed a PDF-version termination letter. The attached PDF-version letter was dated 3 days before the email (May 24, 2025). And the PDF-version termination letter stated Plaintiff's employment "was terminated effective April 29, 2025, due to [his] failure to return to work following [his] leave of absence," which is false on many levels, as outlined herein.

67. Plaintiff believes and therefore avers that he was subjected to discrimination and retaliation because of (1) his race or race discrimination complaints; (2) his paternity leave requests; (3) his use or request of FMLA leave; (4) his known and/or perceived health problems;

11

(5) his record of impairment; (6) his requested accommodations; and (7) Defendant's failure to properly accommodate him (set forth *supra*), constituting violation of Title VII, the ADA, the FMLA, and the PHRA.

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

68. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities (set forth supra).

70. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant, however, Plaintiff did require reasonable medical accommodations at times.

71. Plaintiff requested reasonable accommodations from Defendant, including a request for 10-15 minute stretch breaks, 3 times per 10-hour shift, which was denied by Lang, or alternatively a short medical leave to obtain clarifying doctor's notes as requested by Lang.

72. Plaintiff was terminated, "effective April 29, 2025,", in close temporal proximity to requesting/utilizing reasonable accommodations (as described *supra*).

73. Plaintiff believes and therefore avers that he was subjected to discrimination and retaliation because of (1) his known and/or perceived health problems; (2) his record of impairment; (3) his requested accommodations; (4) his utilization of FMLA qualifying leave; and (5) Defendant's failure to properly accommodate him (set forth *supra*).

74. Plaintiff further believes and therefore avers that his disabilities were a motivating/determinative factor in the termination of his employment with Defendant.

75. Defendant's actions as aforesaid constitute violations of the ADA.

## COUNT II
## Violations of the Family and Medical Leave Act ("FMLA")
**(Retaliation)**

76. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

77. Plaintiff requested and utilized leave to care for his newborn daughter.

78. Plaintiff was explicitly told by Defendant they were granting him "FMLA leave" for this time period, both verbally and in writing.

79. Plaintiff relied upon assurances by Defendant that he was considered on "FMLA leave" (which he understood to be federal job protection), and then suffered a detriment by being terminated in close proximity and as a result of such reliance.

80. Defendant is therefore estopped from denying FMLA protections (including as to retaliation), or arguing non-coverage as a defense to FMLA retaliation[2].

81. Plaintiff was terminated in close proximity to his request for/utilization of FMLA-

---

[2] Courts in this District have held employers are estopped from arguing non-coverage in such circumstances. *See Medley v. Cty. of Montgomery*, No. 12-1995, 2012 U.S. Dist. LEXIS 99006, at *6-8 (E.D. Pa. July 16, 2012)("In the context of the FMLA, "equitable estoppel may, in an appropriate factual scenario, provide a means of redress for employees who detrimentally rely on their employers' misrepresentations about FMLA eligibility." Wilson, 2011 U.S. Dist. LEXIS 127048, 2011 WL 5237345, at *5. "[A]n employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an 'eligible employee' and entitled to leave under the FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage" if the employee reasonably relied on the misrepresentation to her detriment. Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352, 358 (5th Cir. 2006); see also Dombrowski v. Jay Dee Contractors, Inc., 571 F.3d 551, 554 (6th Cir. 2009) ("[I]n certain circumstances equitable estoppel applies to employer statements regarding an employee's FMLA eligibility, preventing the employer from raising non-eligibility as a defense."); see also Sinacole, 287 Fed. Appx. at 995-96, n.5 (refusing to apply equitable estoppel to an FMLA interference claim based on the facts, and noting that the court was expressing no opinion as to whether the doctrine applies to discrimination claims). We therefore conclude that a defendant can be estopped from asserting a non-coverage defense, i.e., from arguing that the plaintiff was not FMLA eligible, if the defendant misinformed the plaintiff about her eligibility and the plaintiff suffered a detriment after relying on the misrepresentation."

qualifying leave to care for his newborn daughter.

82. Defendant committed retaliation in violation of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him.

83. These actions as aforesaid constitute violations of the FMLA.

## COUNT III
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
**(Gender Discrimination and Retaliation)**

84. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

85. While employed by Defendant, Plaintiff was treated in a disparate manner related to his gender as it pertains to utilizing a benefit Defendant offers, paid paternity leave.

86. Despite Plaintiff being eligible for such benefit, Defendant denied Plaintiff and gave him the run around, causing Plaintiff to complain to Defendant's HR and management that he believed he was being treated disparately as compared to a female employee who sought to use the same policy for maternity leave as opposed to him being a male attempting to utilize the policy for paternity leave.

87. Shortly after his complaints of discrimination, Plaintiff was terminated for pretextual reasons.

88. These actions constitute discrimination and retaliation under Title VII.

## COUNT III
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
**([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

89. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14

90. While employed by Defendant, Plaintiff was treated disparately as a result of his race as compared to his non-Black or African-American coworkers as it pertains to terms and conditions of his employment.

91. Plaintiff was subjected to this treatment on a severe or pervasive basis, which caused him to complain to various members of Defendant's management and HR, yet the discrimination was not remedied and no meaningful investigation was done.

92. Shortly after his complaints of discrimination, Plaintiff was terminated for pretextual reasons.

93. These actions constitute discrimination and retaliation under Title VII.

## COUNT III
### Violations of 42 U.S.C. § 1981
**([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

94. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

95. While employed by Defendant, Plaintiff was treated disparately as a result of his race as compared to his non-Black or African-American coworkers as it pertains to terms and conditions of his employment.

96. Plaintiff was subjected to this treatment on a severe or pervasive basis, which caused him to complain to various members of Defendant's management and HR, yet the discrimination was not remedied and no meaningful investigation was done.

97. Shortly after his complaints of discrimination, Plaintiff was terminated for pretextual reasons.

98. The adverse actions taken against Plaintiff as outlined herein because of his race or in retaliation for his concerns of discrimination constitute violations of 42 U.S.C. § 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation at the hands of Defendant until the date of verdict;

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

        Respectfully submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

By: _____
        Ari R. Karpf, Esq. (91538)
        8 Interplex Drive, Suite 210
        Feasterville-Trevose, PA 19053
        akarpf@karpf-law.com
        (215) 639-0801

Dated: December 22, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Elijah Campbell | : | CIVIL ACTION |
| v. | : | |
| AVO Photonics, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (x)

| 12/22/2025 | _[signature]_ | | Plaintiff |
|---|---|---|---|
| **Date** | **Attorney-at-law** | | **Attorney for** |
| 215-639-0801 | 215-639-4970 | | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

Place of Accident, Incident, or Transaction: **Defendants place of business**

---

**RELATED CASE IF ANY:** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?     Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.     Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief *see certification below*
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

### ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CAMPBELL, ELIJAH

**DEFENDANTS**
AVO PHOTONICS, INC.

**(b)** County of Residence of First Listed Plaintiff: Indiana
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

*CIVIL RIGHTS*
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

*PERSONAL INJURY*
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

*PRISONER PETITIONS*
*Habeas Corpus:*
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
*Other:*
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601); Title VII (42USC2000)

Brief description of cause:
Violations of the ADA, FMLA, Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 12/22/2025

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #  _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____